# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 14-982V
(not to be published)

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| TESHA SMITH, | * | Special Master Corcoran |
| | * | |
| Petitioner, | * | Filed: June 2, 2017 |
| | * | |
| v. | * | Proof of Vaccination; Ruling on Record. |
| | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

*Renée Gentry*, Shoemaker, Gentry & Knickelbein, Vienna, VA, for Petitioner.

*Ryan Pyles*, U.S. Department of Justice, Washington, DC, for Respondent.

### FACT RULING ON PROOF OF VACCINATION[1]

In this petition, initially filed on October 14, 2014, Tesha Smith seeks to establish that the influenza ("flu") vaccine that she alleges to have received sometime in February 2012 caused her to develop Guillain-Barré syndrome ("GBS"). To date, however, Petitioner has been unable to locate documentary proof of vaccination, opting instead to attempt to bolster the record with circumstantial evidence of vaccination, prompting Respondent to move for a ruling on that issue or a dismissal of the matter. *See* Motion for Ruling on Record with Regard to Vaccine Administration, dated November 15, 2016 (ECF No. 45). After my review of the evidence submitted, I find that Petitioner has established adequate proof of vaccination.

---

[1] Although his Ruling has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the inclusion of certain kinds of confidential information. To do so, Vaccine Rule 18(b) provides that each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the ruling will be available to the public. *Id.*

**I.      Factual Background**

Petitioner alleges that she received a flu vaccine in February 2012 through her employer, Pilgrim's Pride Corporation in Live Oak, Florida. Petition at 1. Approximately two months later, on April 10, 2012, Ms. Smith was seen at Doctor's Memorial Hospital ("DMH") in Perry, Florida complaining of lower back and neck pain. Ex. 1 at 10. The records indicate that Ms. Smith's doctors believed the cause of the pain was "unknown chronic" and reported that she was unemployed. *Id.* at 10-12. Before being discharged the following day, Ms. Smith underwent a complete blood count (CBC), a urine analysis, and a comprehensive metabolic panel (CMP)—all of which produced normal results. *Id.* at 14-16.

Shortly thereafter, on April 18, 2012, Ms. Smith was taken by ambulance to DMH for "left arm and leg weakness and feels like mouth is twisted for a few hours," stating further that she thought she had suffered a seizure. Ex. 1 at 18-19. Despite again being noted as unemployed, a note from this visit indicated "p[atien]t took a nap after patient got home from work yesterday- woke up with a heavy feeling on left side-woke up this am to go to work and [had] the continued heaviness and slurred speech." *Id.* at 19. Petitioner was then transferred to Tallahassee Memorial Hospital ("TMH") where her condition worsened to complete paralysis, but eventually slowly improved throughout her three month stay at TMH, during which time she was also formally diagnosed with GBS. Ex. 3 at 1. Ultimately, Petitioner was discharged to Miller Nursing Home in July 2012, where she used a wheelchair to get around and continued to have slurred speech. Ex. 2 at 834. The records from Miller Nursing Home extend through October 2014, after which new records have not been filed.

**II.     Exhibits Filed to Establish Proof of Vaccination**

After Ms. Smith filed the medical records referenced above, she offered letters from family members attempting to bolster her assertion that she received the flu vaccine in February 2012. Because I found that these letters established at least a circumstantial case in her favor, I ordered Respondent to file his Rule 4(c) Report, which he did on January 15, 2016. Thereafter, the parties began engaging in settlement discussions hung up on the issue of lack of proof of vaccination. On November 15, 2016, Respondent filed a Motion for Ruling on the Record and a Motion to Dismiss based on the proof of vaccination issue. ECF No. 45.

I allowed Petitioner the opportunity to have more time to propound additional exhibits, which would support her claim that she received the flu vaccine in February 2012. This process continued until May 30, 2017, when I held a status conference to discuss progress in obtaining additional that evidence. At this time, Petitioner informed me that she had completed filing all the additional items she was able to obtain.

The first of the filed items is the sworn affidavit from Petitioner herself. Ex. 11. In it she states, that she remembered seeing flyers all around Pilgrim's Pride offering the flu shot to employees. *Id*. at 1. Ms. Smith recalled telling her coworker, Fallon Steadman, that she was going to receive the flu shot and that Ms. Steadman advised her against it, but that Ms. Smith felt safe receiving the vaccine as she had done in previous years. Ex. 11 at ¶3.

Petitioner also filed an affidavit from Ms. Steadman, who often drove Ms. Smith to work and was at Pilgrim's Pride the day that Ms. Smith purportedly received her flu shot. Ex. 10. Like Ms. Smith, Ms. Steadman stated in her affidavit that she remembered seeing flyers in the locker room at Pilgrim's Pride promoting the flu shot for free to employees. *Id*. at 1. She stated that she had a specific memory of this event because she was scared to receive a flu shot and did not want Ms. Smith to receive one. *Id*. Nonetheless, Ms. Steadman recalled meeting up with Ms. Smith after a break, at which time Ms. Smith told her that she had received the flu vaccine. *Id*. Although Ms. Steadman could not place this event to a specific day, she recalled that it occurred in mid-February 2012. *Id*.

Despite repeatedly contacting Pilgrim's Pride directly, Petitioner has been unable to obtain direct proof of the date that Pilgrim's Pride provided the vaccine, or if Ms. Smith received the vaccine, as the nurse who administered the vaccine retired and could not be located for a statement. Nonetheless, Petitioner filed a statement from Pilgrim's Pride listing the lot number for the flu vaccine that it had administered. *See generally* Ex. 9. As mentioned previously, Petitioner also provided several brief witness statements and Ms. Smith's pay history, as well as her request for medical leave to "have her health assessed" in early March 2012. *See e.g.,* Exs. 4 and 6. The statements were provided by Ms. Smith's daughter, mother, and Fallon Steadman.[2] Each statement was unsworn, and recalled that Ms. Smith had received the flu vaccine in February 2012 and thereafter began to experience health problems. Ex. 4.

### III.     Analysis

A Vaccine Act petitioner must, as a threshold matter in advancing a claim for damages, establish by a preponderance of the evidence receipt of "a vaccine set forth in the Vaccine Injury Table." § 300aa–11(c)(1)(A). The preponderance of the evidence standard means that an allegation is established to be "more likely than not." *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010).

Although contemporaneous documentation of vaccination from a healthcare provider is the best evidence that a vaccination occurred, it is not absolutely required in all cases. *Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995) ("[t]he lack of contemporaneous

---

[2] The statement by Fallon Steadman is substantively the same as her later sworn testimony but the former was not an affidavit and not made under penalty of perjury.

documentary proof of a vaccination . . . does not necessarily bar recovery"). Indeed, as Vaccine Rule 2 states, "[i]f the required medical records are not submitted, the petitioner must include an affidavit detailing the efforts made to obtain such records and the reasons for their unavailability." Vaccine Rule 2(c)(2)(B)(i). Furthermore, if a petitioner's claim is "based in any part on the observations or testimony of any person, the petitioner should include the substance of each person's proposed testimony in a detailed affidavit(s) supporting all elements of the allegations made in the petition." Vaccine Rule 2(c)(2)(B)(ii).

Special masters have thus found that vaccine administration occurred even in the absence of direct documentation. In such cases, preponderant evidence was provided in the form of other medical records and/or witness testimony. For example, corroborative, though backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. *Lamberti v. Sec'y of Health & Human Servs.,* No. 99–507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007) (finding multiple medical record references to vaccine receipt constituted adequate evidence of administration); *Groht v. Sec'y of Health & Human Servs.*, No. 00–287V, 2006 WL 3342222, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2006) (finding a treating physician's note—"4/30/97—Hep B. inj. # 1 (not given here) (pt. wanted this to be charted)"—to be sufficient proof of vaccination); *Wonish v. Sec'y of Health & Human Servs.*, No. 90–667V, 1991 WL 83959, at *4 (Cl. Ct. Spec. Mstr. May 6, 1991) (finding parental testimony "corroborated strongly by medical records [referring] back to the [vaccination]" to be sufficient to establish vaccine administration).

In addition to corroborative medical records, witness testimony can also help establish a sufficient basis for a finding that a vaccine was administered as alleged. *Alger v. Sec'y of Health & Human Servs.*, No. 89–31V, 1990 WL 293408, at *2, 7 (Fed. Cl. Spec. Mstr. Mar. 14, 1990) (oral testimony from a parent and the doctor who administered the vaccine was "more than adequate to support a finding that the vaccine was administered"). The Court of Federal Claims has recognized that special masters may base a finding of vaccination on lay testimony. *Epstein v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 467, 478 (Fed. Cl. 1996); *see also Brown v. Sec'y of Health & Human Servs.*, 18 Cl. Ct. 834, 839–40 (1989) (proof of vaccination in the absence of contemporaneous medical records established via testimony of petitioner's parent, her personal calendar, and evidence of a charge for the vaccine on the physician's billing statement), *rev'd on other grounds*, 920 F.2d 918 (Fed. Cir. 1990).

In the present case, Petitioner has marshaled barely enough circumstantial evidence for me to conclude that she more likely than not received the flu vaccine in February 2012. Petitioner produced email correspondence from Pilgrim's Pride indicating that they provided vaccinations to employees—albeit not confirming a time period—along with the vaccine lot number for the vaccine that was given. Exs. 6 and 9. Ms. Smith also filed her own sworn affidavit, as well as the affidavit of Fallon Steadman, both confirming that Ms. Smith received the vaccine in February 2012. Ms.

4

Steadman's affidavit provides sufficient corroboration of Ms. Smith's allegations to accept these allegations as likely true.

Admittedly the medical records herein do not indicate that Ms. Smith had received a flu vaccine. It appears however, that the lack of evidence in the medical records may have been due to Petitioner's inability to communicate her medical history when she was hospitalized at TMH. She reported extremity weakness and heaviness deteriorating to the point of her needing intubation to breath, eventually resulting in temporary full paralysis, and allowing her to communicate only by eye movements. Such a physical state would make it very difficult to accurately report a medical history and any recent vaccinations. While it appears from the records that the doctors were able to receive a more complete medical history from Petitioner at some point after her admission, I do not find it entirely implausible that a flu vaccine received two months prior to hospitalization could have been accidently omitted by Petitioner when reciting her medical history under the circumstances. Taking all the evidence presented as a whole, I find that there is enough circumstantial evidence in the record to suggest that Ms. Smith received a flu vaccination in February 2012 as Petitioner alleges.

## CONCLUSION

Based upon my review of the record, including the affidavits and witness statements, and the legal arguments of the parties, I find that Petitioner has established by preponderant evidence that she received the flu vaccination on an unspecified date in February 2012.

This ruling makes no determination of any kind as to whether Ms. Smith's alleged damages are a result of an adverse reaction to the flu vaccination. That will be the subject of future proceedings.

**IT IS SO ORDERED**.

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master